**SO ORDERED.**

**SIGNED this 26 day of June, 2017.**



_____
**Joseph N. Callaway**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:

SKIN SENSE, INC.   CASE NO. 16-05626-5-JNC
                   CHAPTER 11
   DEBTOR

## MEMORANDUM OPINION AND ORDER DENYING PLAN CONFIRMATION AND REGARDING MOTION TO CONVERT OR APPOINT A TRUSTEE

The matters before the court are the First Amended Disclosure Statement (D.E. 365; the "Amended Disclosure Statement") and the Amended Plan of Reorganization (D.E. 364; the "Amended Plan") filed by the chapter 11 debtor Skin Sense, Inc. ("Skin Sense" or the "Debtor") on April 17, 2017. Capital Bank Corporation ("Capital Bank") filed its Response in Opposition to the Disclosure Statement and Amended Plan on May 18, 2017 (D.E. 381). Envision SMG, LLC ("Envision") filed an Objection to Confirmation of Plan on May 19, 2017 (D.E. 382) and an Objection to Disclosure Statement on May 22, 2017 (D.E. 385).  The above documents are collectively referenced at times below as the "Plan Matters."

On May 24 and 30, 2017, hearings were conducted in Greenville, North Carolina, (together, the "Hearings") regarding the Plan Matters along with other motions, objections and

responses then pending in this chapter 11 case affecting or related to the Plan Matters, including the Motion to Convert, or in the Alternative, Dismiss Case filed by the Bankruptcy Administrator (D.E. 159; the "BA Motion"); the Motion to Convert Chapter 11 Case to Chapter 7 or in the Alternative Motion to Appoint Trustee filed by Envision (D.E. 167; the "Envision Motion"); the Motion for Relief from Stay or in the Alternative Motion for Adequate Protection filed by Capital Bank (D.E. 280; the "Capital Bank Motion"); and the Debtor's Objections to the BA Motion, Envision Motion, and Capital Bank Motion.[1]

Evidentiary matters were heard at the May 24 hearing, and closing legal arguments on plan confirmation and objections to the disclosure statement were heard on May 30. At the conclusion of the May 30 hearing, the Plan Matters were taken under advisement. Skin Sense was instructed to revise its financial projection documents submitted with or in support of the Amended Disclosure Statement and Amended Plan (Exhibit D attached to the Amended Disclosure Statement) to conform to the evidence, and it filed a revised Exhibit D on June 8, 2017 (D.E. 398; the "Supplemental Filing"). The court has considered the evidence presented at the May 24 hearing, the arguments from the May 30 hearing, the Supplemental Filing, and other matters of record in the case, and determines that: (a) the Envision Objection to the Amended Disclosure Statement is denied, and the Amended Disclosure Statement, with the addition of the Supplemental Filing, remains approved; (b) the BA Motion, the Envision Motion, and the Capital Bank Motion are held open for further consideration at a subsequent plan confirmation hearing; and (c) the Envision Objection to Confirmation of Amended Plan is sustained, as the Debtor has not satisfied

---

[1] Other matters heard that day not necessary to address the Plan Matters were decided in separate orders of the court found at Docket Entries 390, 392, and 395.

the requirements of 11 U.S.C. §§ 1129(a)(3) and 1129(a)(11).[2] As a result, confirmation of the Amended Plan is denied, but not with prejudice as plan confirmation remains possible in this chapter 11 case as discussed below.

## BACKGROUND

Skin Sense, Inc. is a North Carolina corporation founded and incorporated in 1994 by Ms. Diana Angela Padgett ("Ms. Padgett"), who is the Debtor's sole owner and serves as its president. Skin Sense filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on October 28, 2016. At that time, the Debtor employed approximately fifty individuals and operated two day spa locations in Raleigh, North Carolina, one at 6801 Falls of Neuse Road, Raleigh, North Carolina ("North Raleigh") and another in the Brier Creek Commons Shopping Center ("Brier Creek"). Skin Sense owns the shopping center property and building at North Raleigh, leasing extra space located there to third parties. At the time of case filing, Skin Sense leased the Brier Creek location from Brier Creek Commons, LLC, but the Debtor ceased business operations there and vacated the facility on or about December 24, 2016. The Debtor also owns and holds a partial interest in a mobile home park, and assorted personal property including three vehicles, various pieces of spa equipment and related inventory, and office furnishings and equipment.[3] It continues to operate from the North Raleigh location.

A considerable portion of the Debtor's business originates from the sale of gift cards, through which customers pre-pay for products or spa services to be performed or produced by Skin Sense at undetermined dates in the future. During the bankruptcy case, the Debtor has been

---

[2] Because the Debtor has not satisfied the requirements of 11 U.S.C. § 1129(a), the court does reach the issue of whether the cramdown provisions of 11 U.S.C. § 1129(b)(2)(A) are applicable in this case or met by Skin Sense over objections raised by Envision and the Bankruptcy Administrator.

[3] At the time the petition was filed, the Debtor also owned real estate consisting of a vacation home and lot on a mountain lake in Virginia that Ms. Padgett apparently used as a retreat. The Debtor was unable make payments on a purchase money note secured by the Virginia property and the automatic stay of 11 U.S.C. § 362 has been modified to permit the holder of the note to foreclose upon the Virginia property under state law. *See* D.E. 390.

required to segregate proceeds derived from the sale of gifts cards into a separate bank account (the "Gift Card Account") to protect possible administrative claims of customers purchasing postpetition gift cards in the event the case converted to chapter 7 or Skin Sense otherwise ceased business operations while in bankruptcy. *See* D.E. 100.[4]  The Debtor was allowed to draw immediately for use in its business operations fifteen percent (15%) of postpetition gift card sale proceeds, with the balance to be held in a segregated bank account pending redemption of the corresponding gift card. Once redeemed, the remaining eighty-five percent (85%) of sale proceeds could be recognized and transferred to the Debtor's operating account for use pursuant to applicable cash collateral orders issued in the case. *See* Preliminary Order Establishing Procedure for Debtor's Use of Gift Cards and Provision of Refunds in the Ordinary Course of Business dated December 1, 2016 (D.E. 100), as modified by the Order Regarding Motions to Pay Prepetition Wages and to Establish a Procedure dated December 14, 2016 (D.E. 124), and the Memorandum Opinion Regarding Postpetition Gift Card Proceeds dated February 3, 2017 (D.E. 267).  The Debtor has materially complied with the gift card account escrow requirements imposed in the case since entry of the December 1 order. As of the Hearing Date, approximately $130,000.00 remained on hand in the Gift Card Account.

The Debtor filed its initial proposed disclosure statement (D.E. 310) and plan of reorganization (D.E. 309) on February 24, 2017. Various initial objections were filed, resulting in the filing of the Amended Disclosure Statement and Amended Plan on April 17, 2017.  The Debtor filed its Ballot Report on May 23, 2017 (D.E. 387), which reflects that all classes other than

---

[4] The December 1, 2016 order provided that "the funds held in the Gift Card Account were to benefit and secure the possible administrative claims of the post-petition gift card purchasers in the event the Debtor is unable to perform the future services contemplated in the gift card purchases" and that "funds may be released and transferred to the Debtor's post-petition chapter 11 operating account as particular gift cards are redeemed on a monthly basis." D.E. 100.

Envision are either unimpaired, accepted the Amended Plan on at least a conditional basis, or in one instance had not voted.

At the May 24 hearing, the contested evidence centered primarily upon the truthfulness and accuracy of Exhibit D attached to the Amended Disclosure Statement (the "Projections"), consisting of the projected financial operating income and expenses of the Debtor for the period of June 2017 to May 2018 on its first page, and then annualized for the remainder of 2018 and the full 2019, 2020 and 2021 calendar years on its second page.[5] With respect to the first year projections, Envision maintains that the document contains ten material misstatements or errors. Five of those contentions were determined to be either immaterial or adequately refuted by the Debtor at the May 24 hearing. However, taken at face value, Envision's surviving five points of error result in understated operational expenses or overstated retained income totaling about $242,500 during the twelve month period immediately following confirmation. The annualized understated expense items consist of: (a) $28,000 in expected utilities; (b) $11,000 in necessary building maintenance for the North Raleigh location; (c) $39,000 in anticipated merchant fees for customer credit card usage; and (d) $63,000 in additional payroll and payroll taxes.[6] The fifth point resulted from an income line item comprised of twelve months' worth of customer tips totaling $101,500 earmarked to employees without a corresponding wage distribution to those tip-earning employees. Clearly, Skin Sense would not be able to keep tip income to use in its operations, and to be accurate the projections must show a corresponding distribution to employees, whether contained in the wage distribution line or as its own expense line item.

---

[5] The court's comments and analysis in this memorandum are restricted to the June 2017 to May 2018 time period since the first year projection does not pass muster. However, the 2021 projection contains a line entry for $900,000 instead of $90,000 in anticipated employee tips, resulting in an overstatement of income by $810,000.

[6] All projections are rounded to the nearest thousand.

The Projections show a beginning cash on hand of $210,000 on June 1, 2017. After adding expected income, and deducting anticipated operating expenses and first year plan payments, it reflects a positive ending cash balance of $166,000 on May 31, 2018. However, if the Debtor's projected annual income receipts shown in the Projections are correct (which Envision disputes), deducting the $242,500 of contended errors would instead result in a May 31, 2018 *negative* balance of $76,500. Thus, if the five errors identified by Envision are accurate, and accepting all other Skin Sense projections as true, at some point during the year of June 2017 to May 2018, the Debtor would run out of cash and fail to survive its first year of post-confirmation operations.

On June 8, 2017, the Debtor submitted the Supplemental Filing, projecting additional income and attempting to provide line-item corrections to its Projections, addressing the nearly quarter of a million dollars in spreadsheet discrepancies and errors discussed above. It seeks to obtain plan approval without necessity of further hearing, but no evidence has been heard on the new contentions.

## DISCUSSION

**DISCLOSURE STATEMENT**

In its Objection to Amended Disclosure Statement, Envision lists eight separate grounds for objection falling into three categories: (1) failure of the Debtor to emphasize that it operated at a loss both prepetition and since the chapter 11 petition filing, allegedly a result of owner mismanagement; (2) failure to provide postpetition gift card holders with administrative expense claims at confirmation and/or continue segregation of gift card proceeds post-confirmation; and (3) reliance on unrealistic and inaccurate financial projections, including the $242,500 inaccuracies listed above and the failure to account for postpetition interest and attorneys' fee obligations due to oversecured creditors like Capital Bank.

**Financial Mismanagement**

Under 11 U.S.C. §1125(b), the purpose of a chapter 11 disclosure statement is to provide "adequate information" to creditors sufficient to enable those parties to make an informed judgment on whether to vote for or against a proposed plan of reorganization in a chapter 11 case. *See In re Hendrix-Barnhill Co., Inc.*, Case No. 11-01974-8-RDD, 2011 WL 5902740 (Bankr. E.D.N.C. Oct. 27, 2011). The key term "adequate information" is defined at 11 U.S.C. §1125(a)(1).[7] It espouses a flexible standard that takes into account the complexity, facts and circumstances of a particular case.

Here, the Amended Plan and Amended Disclosure Statement, taken together,[8] provided creditors with more than adequate information on the full financial history of Skin Sense to vote for or against the plan. The Debtor's lack of profitability, both before and after filing chapter 11, is readily discernable from the information contained in the Amended Disclosure Statement and Amended Plan. Also, an interested party desiring further information is alerted to review the plethora of further financial information filed in the case such as the monthly reports, the gift card orders and cash collateral motions and orders. Further, the Debtor disputes that it lost money prepetition, and the monthly operating reports and budgets filed in the case could support its

---

[7] Section 1125(a)(1) provides:
"Adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential material Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information."

[8] The Amended Disclosure Statement incorporates the Amended Plan, and both documents were served on all parties together.

contention that the Debtor would be profitable from a cash flow (rather than accrual) standpoint if permitted unrestricted access to the Gift Card Account.

Additionally, specific instances of mismanagement are not shown by Envision, excepting one instance of an apparent attempt by Ms. Padgett to "get around" orders regarding segregation of gift card proceeds in late December 2016. The one instance was quickly brought to light and addressed through a monetary sanction imposed against Ms. Padgett as the principal of the Debtor for an amount less than $5,000. The matter was fully resolved then and it is not sufficiently related to the chances of post-confirmation plan success to warrant inclusion in the disclosure statement as advocated by Envision.

Finally, Envision bases its objection in part on a general lack of sufficient background information about the Debtor. Excluding its counsel of record, the only personal representative of Envision appearing and testifying for it to date in the case is Mr. Howard Jacobson, the estranged husband of the Debtor's owner (Ms. Padgett). Prior to their separation, Mr. Jacobson worked for Skin Sense on an intermittent basis and remained heavily involved in the Debtor's financial affairs even when he was not formally employed by it.[9]  Indeed, throughout the history of this chapter 11 case, on several occasions Mr. Jacobson has testified and shown himself to be very knowledgeable concerning the prior operating history of the Debtor and its financial woes leading to the chapter 11 filing, usually with a better grasp on the historical operating details of the Debtor than Ms. Padgett.

Mr. Jacobson does not hold an allowed personal claim in the case, but instead appears to be using Envision to further his admitted quest to take control of Skin Sense and its assets through a liquidation or similar alternative plan. It is unclear if Mr. Jacobson is the de facto manager of

---

[9] Mr. Jacobson and Ms. Padgett are reportedly involved in a contentious divorce proceeding in state court. They both are also guarantors of the Envision obligations, the Brier Creek lease and the Capital Bank notes.

Envision, or is still officially a member of it, but no other member, manager or officer of Envision has been identified or appeared in the case, so in the absence of any other information the court can only conclude that Mr. Jacobson controls Envision in this chapter 11 case. So long as Mr. Jacobson controls Envision, it is clear that no matter how much detailed information the Debtor might provide, Envision will never vote for any plan of reorganization that leaves control of Skin Sense in the hands of Ms. Padgett.

Based on this analysis, Envision's objections to the Amended Disclosure Statement for failure to contain adequate information concerning lack of post-petition profitability, alleged mismanagement, and pre-petition financial woes are overruled.

**Gift Cards**

Envision's objection to the Amended Disclosure Statement regarding gift card treatment is misplaced, as it has not shown that any information provided concerning gift card treatment before, during or after the case is either untrue or inadequate. No showing was made to indicate that the proposed treatment would violate state law or contractual rights existing between the Debtor and the gift card holders. In fact, one of the primary purposes of filing the Amended Plan and Amended Disclosure Statement appears to have been for the very purpose of creating a gift card class, providing information to that class, and clarifying the proposed post-confirmation treatment and rights of gift card holders.[10] The Amended Disclosure Statement was served on all known postpetition gift card purchasers and acknowledges that the Debtor and the gift card holders are bound to the agreement to ask for and receive pre-paid services, and informs gift card holders that they will not be entitled to claim and receive a cash refund by operation of state law or contract

---

[10] Envision objected to the original disclosure statement in part based on the lack of clarity with respect to the treatment of gift card holders, among other things. It maintained that gift card holders should be classified with a stated treatment. The fact that Envision does not like the proposed treatment of that class is not, alone, a basis for renewed objection.

absent an inability of the Debtor to provide the promised services in the future. Thus, if the Debtor remains operational post-confirmation, it can provide the agreed services (or products) and over time retire outstanding gift cards. Despite generally accepted accounting principles, and however unwise, North Carolina law appears to allow a business to retain and use gift card proceeds to capitalize its business, in this case whether from the Gift Card Account or generated by postpetition gift card sales in the future.

As a result, so long as post-confirmation unrestricted Gift Card Account access is not obtained by a "means forbidden by law," the wisdom of such unrestricted access is a factor for creditors to assess in considering whether to vote in favor of the plan, not a lack of adequate information in the disclosure statement that would prevent a plan vote from occurring in the first place. While the various gift card orders provided protection for the gift card purchasers during the pre-confirmation period, the Debtor is free to provide post-confirmation services and treatment in a manner consistent with applicable non-bankruptcy state law if that treatment is accepted by the affected class[11] and if the Bankruptcy Code's requirements contained in § 1129 are met. Envision's objections to the Amended Disclosure Statement based on proposed gift card class information are overruled and denied. The objection is actually directed at plan treatment, and Envision is not a member of that class in any event.

**Accuracy of Financial Projections**

Envision's third objection to the Amended Disclosure Statement is based on the lack of accurate information contained in the financial projections attached thereto. The Debtor contends that any inaccuracies were immaterial for disclosure statement purposes, overcome by Ms. Padgett's testimony and cured in the Supplemental Filing. For disclosure statement purposes, the

---

[11] Indeed, all fourteen ballots cast in the gift card class accepted the proposed plan treatment.

Supplemental Filing may provide necessary financial information if the Supplemental Filing consists of uncontroverted facts. Even if the revised projections are accurate, the rub here for Skin Sense is that plan confirmation cannot occur unless it first shows that confirmation will not likely to be followed by liquidation or the need for further reorganization, a requirement dubbed the "feasibility test" in bankruptcy parlance. Significantly, the feasibility test is a function of 11 U.S.C. § 1129(a)(11), rather than 11 U.S.C. § 1125. Therefore, while the Supplemental Filing may have accomplished a partial goal of retaining *conditional approval* of the Debtor's Amended Disclosure Statement, that result only overcomes Envision's third objection to the disclosure statement, not the plan.

**PLAN OBJECTION**

As discussed in detail above, at the May 24 and May 30 hearings, Envision showed or forecast likely errors and understated expenses in the Projections totaling $242,500 for the plan's first fiscal year of June 2017 to May 2018. If accurate, the aggregate miscalculation predicts that Skin Sense will run out of cash and will not be able to perform as forecast during the year following confirmation, thereby raising the specter of whether the Amended Plan is feasible as required by 11 U.S.C. § 1129(a)(11).

To satisfy the section 1129(a)(11) requirements, a chapter 11 debtor must establish, by a preponderance of the evidence, that "confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization . . . ." 11 U.S.C. § 1129(a)(11); *see also In re Accu-Fab, Inc.*, Case No. 04-00651-5-ATS (Bankr. E.D.N.C. Oct. 27, 2004). The burden of establishing the feasibility of a proffered plan of reorganization is on the debtor, and must be satisfied by a preponderance of the evidence. *See In re Thomas Properties II Ltd. P'ship*, 241 F.3d 959, 963 (8th Cir. 2001). Here, the Debtor's Supplemental Filing, with nothing more, fails to

satisfy that standard as the court is unable to determine from it alone whether the Debtor will have sufficient means to fund its proposed Amended Plan going forward, whether the Amended Plan is actually workable, and whether the Debtor is likely to default on the plan terms and verge into forced liquidation. If the business is closed and liquidated, unsecured creditors will not get paid, and the gift card class will not receive the contracted benefit of class members' bargain while its mechanism for protection in the event of liquidation (the Gift Card Account) will have disappeared.

On the other hand, the Supplemental Filing purports to have addressed at least some of those concerns, but it does not conform to the Amended Plan currently before the court. For example, the Supplemental Filing appears to propose different treatment for at least some of the administrative claims in the case, such as the timing for payment of fees approved but not yet paid to chapter 11 counsel. Such a change may or may not increase the chances that Skin Sense will survive beyond the first year of post-confirmation operations, but the court cannot determine whether those changes satisfy feasibility concerns without hearing further evidence to explain the effect of the listed corrections. Also, fairness dictates that Envision and others be provided with an opportunity to make counterpoints.

All of these points also bring to question whether or not the Amended Plan was filed in good faith under 11 U.S.C. § 1129(a)(3). Even though a 100% payment plan is proposed, the Projections as originally filed are so fraught with error that the court is in need of further testimony to establish whether Debtor's management earnestly believes it can achieve that goal. The revised projection contained in the Supplemental Filing is less than a model of clarity. The changes suggested by the Supplemental Filing regarding the use and timing of the use of proceeds in the Gift Card Account directly affects administrative claims treatment, and when coupled with the

increased monthly payments to secured creditors proposed at the Hearings, the court is unable to determine the likelihood of plan performance and 100% payout to creditors as proposed.

## CONCLUSION

To obtain plan confirmation, Skin Sense must establish that its proposed plan is feasible under § 1129(a)(11) and meets the good faith requirements of § 1129(a)(3). Further evidence is needed on reasonably accurate and understandable replacement projections to address the feasibility concerns. The possible effect on other creditors of a subsequent plan default must be adequately explained to satisfy the good faith requirement. Neither of those chapter 11 plan requirements have yet been met. Confirmation of the Amended Plan is therefore denied without prejudice. Accordingly, it is hereby ordered:

1. **By 3:00 pm on June 30, 2017**, the Debtor shall file a revision to its Amended Plan (the "Revised Plan") to incorporate the Supplemental Filing of June 8, 2017 and conform plan terms to the changes contained therein, the revisions announced at the Hearings with respect to secured creditors (Capital Bank and Envision), and any other changes announced at the Hearings or proposed in the Revised Plan.

2. The Amended Disclosure Statement, as revised with the Supplemental Filing, remains conditionally approved. Should the Debtor determine that a further revised disclosure statement is necessary, it shall file the same with the Revised Plan and the court will promptly review and consider whether the revised disclosure statement should be deemed conditionally approved.

3. Upon filing the Revised Plan (and conditional approval of the revised disclosure statement if necessary), pursuant to Federal Rules of Bankruptcy Procedure 3017 and 3018, the time for creditors to consider, vote and object to the Revised Plan (and disclosure statement if

applicable) is reduced to fourteen days, such that the deadline to file objections and new ballots shall be and is hereby set as **5:00 pm on July 14, 2017**.

4.  Service of the Revised Plan (and disclosure statement if necessary) by the Debtor shall include **adequate notice of the shortened time for response** and **further provide notice** that ballots previously cast on the Amended Plan shall remain in full force and effect for Revised Plan confirmation purposes unless that party actively recasts its ballot and changes its prior vote. In addition to other forms of service, the Revised Plan (and disclosure statement if necessary) shall be served by electronical mail upon all counsel who have made formal appearances in this case.

5.  A plan confirmation hearing on the Revised Plan (and on disclosure statement if necessary) is hereby set and noticed for hearing on an expedited basis **for July 18, 2017 at 11:00 a.m.** at the United States Bankruptcy Courthouse, 2nd Floor Courtroom, 150 Reade Circle, Greenville, North Carolina 27858.  The BA Motion, Envision Motion, and Capital Bank Motion will also be considered at that time.

**END OF DOCUMENT**